IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: __:11-cv-___

| | |
|---|---|
| NORRIS FOSTER, NOAH ALPERN, and LOUIS ALPERN, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GEORGE B. ABERCROMBIE, ADRIAN ADAMS, KIP A. FREY, ALAN F. HOLMER, NANCY J. HUTSON, PH.D., RICHARD S. KENT, M.D., KENNETH B. LEE, JR., JONATHAN S. LEFF, INSPIRE PHARMACEUTICALS, INC., MERCK & CO., INC., and MONARCH TRANSACTION CORP.,<br><br>Defendants. | CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES<br><br>JURY TRIAL DEMANDED |

1. Plaintiffs Norris Foster, Noah Alpern, and Louis Alpern ("Plaintiffs") file this direct shareholder class action lawsuit on behalf of the public shareholders of Inspire Pharmaceuticals, Inc. ("Inspire" or the "Company") against Inspire's board of directors arising out of the proposed takeover by Merck & Co., Inc. ("Merck") through an unfair process that was designed and implemented in breach of fiduciary duties owed to Inspire's shareholders ("Proposed Transaction" or "Proposed Acquisition").

2. Pursuant to the Proposed Acquisition, Merck, through a subsidiary, will commence a tender offer for all outstanding common stock of Inspire at a price of $5.00 per share in cash. The transaction has a total cash value of approximately $430 million.

- 1 -

3. The Proposed Acquisition is expected to commence on April 19, 2011 and to be completed within the next 30-45 days. Time is, therefore, of the essence.

4. Plaintiffs seek equitable relief only.

5. In short, the Proposed Acquisition is designed to unlawfully divest Inspire's public stockholders of their holdings without providing them the maximized value to which they are entitled. Defendants know that these assets will continue to produce substantial revenue and earnings.

## PARTIES

6. Plaintiffs are and have been at all material times public shareholders of Inspire. Plaintiffs Norris Foster and Dr. Louis Alpern are residents of the state of Texas. Plaintiff Noah Alpern is a resident of the state of California.

7. Defendant George B. Abercrombie is and has been at all material times a director of Inspire.

8. Defendant Adrian Adams is and has been at all material times a director of Inspire.

9. Defendant Kip A. Frey is and has been at all material times a director of Inspire.

10. Defendant Alan F. Holmer is and has been at all material times a director of Inspire.

11. Defendant Nancy J. Hutson, Ph.D., is and has been at all material times a director of Inspire.

12. Defendant Richard S. Kent, M.D., is and has been at all material times a director of Inspire.

13. Defendant Kenneth B. Lee, Jr., is and has been at all material times a director of Inspire.

14. Defendant Jonathan S. Leff is and has been at all material times a director of Inspire.

15. The defendants listed in the paragraphs numbered 7-14 above are collectively referred to herein as the "Individual Defendants" or the "Board."

16. Defendant Inspire is Delaware corporation with its principal place of business located at 8081 Arco Corporate Drive, Suite 400, Raleigh, North Carolina. Inspire is a biopharmaceutical company focused on researching, developing and commercializing prescription pharmaceutical products for ophthalmic and pulmonary diseases. The Company is publicly traded on the NASDAQ stock exchange under the ticker "ISPH." According to the Company's Form 10-K filed on February 25, 2011 with the U.S. Securities and Exchange Commission, there were over 83 million public shares of Inspire outstanding. These shares are held by hundreds, if not thousands, of beneficial holders.

17. Defendant Merck is a New Jersey corporation and touted as a global health care company.

18. Defendant Monarch Transaction Corp. is a Delaware corporation, a wholly owned subsidiary of Merck, and a vehicle through which Defendants seek to effectuate the Proposed Acquisition. Defendant Monarch Transaction Corp. and Merck are collectively referred to herein as "Merck."

**JURISDICTION AND VENUE**

19. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

20. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District, and because Defendants:

(a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District; and

(b) conduct substantial business in this District.

This Court has personal jurisdiction over Defendants because a substantial portion of the conduct complained of herein took place in the State of North Carolina and because Defendants are authorized to conduct business in this state and have sufficient minimum contacts with this state so as to render the exercise of personal jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

21. Under applicable law, in any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: (i) a change in corporate control; or (ii) a break up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium. To diligently comply with these duties, the directors and/or officers may not take any action that:

(a) adversely affects the value provided to the corporation's shareholders;

(b) will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c) contractually prohibits them from complying with their fiduciary duties;

(d) will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e) will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

22. In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Inspire, are obligated under applicable law to refrain from:

(a) participating in any transaction where the directors' or officers' loyalties are divided;

(b) participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c) unjustly enriching themselves at the expense or to the detriment of the public shareholders.

23. The Individual Defendants are also obliged to honor their duty of candor to Inspire shareholders by, *inter alia*, providing all material information to the shareholders regarding a scenario in which they are asked to vote their shares or seek appraisal. This duty of candor ensures that shareholders have all the information that will enable them to make informed, rational and intelligent decisions about whether to vote their shares or seek appraisal.

24. Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price and terms, is placed upon Defendants as a matter of law.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action individually and as a class action on behalf of all holders of Inspire common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

26. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

27. The Class is so numerous that joinder of all members is impracticable.

28. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

(a) whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiffs and the other members of the Class in connection with the Acquisition;

(b) whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiffs and the other members of the Class in connection with the Acquisition;

(c) whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiffs and the other members of the Class in connection with the Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(d) whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

(e) whether the Individual Defendants have breached their fiduciary duty of candor by failing to adequately apprise Inspire shareholders of material information about the Proposed Acquisition;

(f) whether Plaintiffs and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated; and

(g) whether Inspire and Merck are aiding and abetting the wrongful acts of the Individual Defendants.

29. Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

30. Plaintiffs are an adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

32. Plaintiffs anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *Inspire's Potential Is Undeniable*

34. Inspire is a biopharmaceutical company focused on researching, developing and commercializing prescription pharmaceutical products for ophthalmic and pulmonary diseases. The advanced compounds in the clinical pipeline are denufosol tetrasodium for cystic fibrosis and Prolacria for dry eye, both of which are in Phase III development, and AzaSite for blepharitis, which is in Phase II development.

35. Inspire has historically done well for its shareholders weathering the recent economic downturn:



36. Indeed, the Company's fiscal year 2010 fourth quarter and full year results speak for themselves. In a release describing the promising outlook for Inspire, the Company touted:

- 2010 Total Revenue Increased 15% -

- 2010 AZASITE(R) Revenue Increased 22% -

- Strategic Corporate Restructuring Estimated to Save More Than $40 Million in 2011 –

\*   \*   \*

Total revenue for the year ended December 31, 2010 was $106.4 million, an increase of 15% compared to $92.2 million recognized in 2009. AZASITE revenue was $42.7 million in 2010, an increase of 22% compared to $35.0 million recognized in 2009.

\*   \*   \*

"In 2010, we delivered strong financial performance through solid revenue growth and tight expense management," said Adrian Adams, President and CEO of Inspire. "We generated double digit revenue growth for the sixth consecutive year from our

eye care business, driven by a 36% increase in AZASITE prescriptions, continued ELESTAT sales and RESTASIS royalties. As a result of our prudent expense and cash flow management during the year, we were able to pay off our term loan facility and end the year with a strong balance sheet with no debt. The strategic corporate restructuring announced today will allow us to focus on our eye care business and drive toward profitability and positive cash flow by significantly reducing our cost base and cash burn."

37. In fact, analysts estimate that Inspire will experience over 21% earnings growth rate for fiscal year 2011 and nearly a 70% earnings growth rate for fiscal year 2012.[1]

*The Proposed Acquisition Substantially Undervalues Inspire through an Unfair Process*

38. On April 5, 2011, Defendants announced the Proposed Acquisition and the definitive merger agreement ("Agreement") pursuant to which Merck will acquire Inspire:

> WHITEHOUSE STATION, N.J. & RALEIGH, N.C., Apr 05, 2011 (BUSINESS WIRE) -- Merck (NYSE:MRK), known as MSD outside the United States and Canada, and Inspire Pharmaceuticals, Inc. (NASDAQ: ISPH) today announced that they have entered into a definitive agreement under which Merck will acquire Inspire, a specialty pharmaceutical company focused on developing and commercializing ophthalmic products.
>
> Under the terms of the agreement, Merck, through a subsidiary, will commence a tender offer for all outstanding common stock of Inspire at a price of $5.00 per share in cash, a 26 percent premium to the closing price of Inspire's common stock on April 4, 2011. The transaction has a total cash value of approximately $430 million. The transaction has been unanimously approved by the boards of directors of both companies and Inspire's board recommended that the company's shareholders tender their shares pursuant to the tender offer. In addition, Warburg Pincus Private Equity IX, L.P., which owns approximately 28 percent of the outstanding shares of Inspire, has agreed to tender all of its shares into the offer.
>
> "Merck continues to build upon its long-term commitment to improving therapeutic options for the treatment of eye diseases," said Beverly Lybrand, senior vice president and general manager, neuroscience and ophthalmology, Merck. "This acquisition combines the talented commercialization organization at Inspire with the excellent team already in place at Merck thereby strengthening our ophthalmology business and positioning us for future growth with an expanded portfolio. This deal

---

[1] http://moneycentral.msn.com/investor/invsub/analyst/earnest.asp?Page=EarningsGrowthRates&symbol=ISPH (last visited Apr. 7, 2011).

helps address the needs of patients and customers in ophthalmology and creates value for both companies."

In March, 2011, Merck announced that the New Drug Application (NDA) for SAFLUTAN® (tafluprost), an investigational preservative-free prostaglandin analogue ophthalmic solution, had been accepted for standard review by the U.S. Food and Drug Administration (FDA). SAFLUTAN is the proposed trade name for tafluprost in the United States.

"As one of the world's leading healthcare companies, Merck is the ideal partner to enhance the long-term potential of Inspire's portfolio of ophthalmic assets. We are delighted that Merck recognized the strength of an integrated platform leveraging the growing AZASITE® (azithromycin ophthalmic solution) 1% product opportunity and the strong relationships within the ophthalmic community cultivated by our high quality, specialty eye care sales force in the U.S.," said Adrian Adams, president and CEO of Inspire. "Based upon an extensive analysis of various strategic options, as I have outlined since we announced the results of the TIGER-2 Phase 3 clinical trial, we believe this combination provides a compelling and timely opportunity for our shareholders to realize the value of their investment in Inspire."

The closing of the tender offer will be subject to certain conditions, including the tender of a number of Inspire shares that, together with shares owned by Merck, represent at least a majority of the total number of Inspire's outstanding shares (assuming the exercise of all options and vesting of restricted stock units), the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the completion of the tender offer, Merck will acquire all remaining shares through a second-step merger.

39. The $5 price offered by Merck does not give shareholders with full value of their shares. The Individual Defendants utterly failed to properly inform themselves of the value of Inspire.

40. Indeed, as the stock chart above demonstrates, Inspire's common stock has traded well above $5.00 per share during the entire 4th quarter of 2010 and Defendants appear to simply be fostering Merck's attempt to grab Inspire for itself at a steep discount during a very temporary decline in the stock price.

41. Moreover, the Agreement is unfairly structured to ensure that Merck purchases the Company. The Company has agreed to a No Solicitation provision, which prevents the Company from soliciting or initiating discussions with third parties regarding other proposals to acquire the

Company and restricts the Company's ability to respond to any such proposals. The Agreement also unfairly grants Merck a "Top Up Option" that would allow Merck "to purchase that number of shares of Company common stock that, when added to the aggregate number of shares of Company common stock owned by [Merck] shall constitute 5,000 shares more than 90% of the shares of Company common stock outstanding after such exercise"; and further provides that when Merck "own at least 90% of the outstanding shares of Company common stock, the Merger will be completed without a meeting of the Company's stockholders, pursuant to Delaware's 'short-form' merger statute." Furthermore, the Agreement provides Merck with beneficial information sharing rights if a superior bidder were to present itself and a reaffirmation provision requiring the Board to reaffirm its approval of the Proposed Transaction upon request by Merck, which has the effect of spurning superior bids. Likewise, the Agreement provides that the Company could owe a $17 million termination fee.

42.  Plaintiffs and the class have no adequate remedy at law. With the current Proposed Transaction and tender offer, Plaintiffs and the class face irreparable injury as a result of Defendants' breach of fiduciary duties.

## CAUSES OF ACTION

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

43.  Plaintiffs repeat and reallege each allegation set forth herein.

44.  Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith and independence owed to the public shareholders of Inspire and have acted to put the interests of Merck ahead of the interests of Inspire's shareholders.

45.  By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, knowingly or recklessly and in bad faith are

attempting to unfairly deprive Plaintiffs and other members of the Class of the true value of their investment in Inspire.

46. As demonstrated by the allegations above, Defendants knowingly or recklessly failed to exercise the care required, and breached their duties of loyalty, good faith and independence owed to the shareholders of Inspire because, among other reasons, they failed to:

- fully inform themselves of the market value of Inspire before entering into the Agreement;

- act in the best interests of the public shareholders of Inspire common stock;

- maximize shareholder value;

- obtain the best financial and other terms when the Company's independent existence will be materially altered by the Acquisition; and

- act in accordance with their fundamental duties of good faith, due care and loyalty.

47. By reason of the foregoing acts, practices and course of conduct, Defendants have knowingly or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiffs and the other members of the Class.

48. Unless enjoined by this Court, Defendants will continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiffs and the Class, and may consummate the proposed Acquisition which will exclude the Class from the maximized value they are entitled to all to the irreparable harm of the Class.

49. As a result of Defendants' unlawful actions, Plaintiffs and the other members of the Class will be irreparably harmed in that they will not receive the real value of their equity ownership of the Company. Unless the proposed Acquisition is enjoined by the Court, Defendants will

continue to knowingly or recklessly and in bad faith breach their fiduciary duties owed to Plaintiffs and the members of the Class to the irreparable harm of the members of the Class.

50. Plaintiffs and the members of the Class have an inadequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiffs and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

51. Plaintiffs seek to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against the Individual Defendants. Plaintiffs' counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## COUNT II

**Aiding & Abetting the Individual Defendants' Breach of Fiduciary Duty**
**(Against Defendants Inspire and Merck)**

52. Plaintiffs repeat and reallege each allegation set forth herein.

53. Defendants Inspire and Merck are sued herein as aiders and abettors of the breaches of fiduciary duties outlined above by the Individual Defendants, as members of the Board of Inspire.

54. The Individual Defendants breached their fiduciary duties of good faith, loyalty, and due care to the Inspire shareholders by failing to:

- fully inform themselves of the market value of Inspire before entering into the Agreement;

- act in the best interests of the public shareholders of Inspire common stock;

- maximize shareholder value;

- obtain the best financial and other terms when the Company's independent existence will be materially altered by the Proposed Acquisition; and

- act in accordance with their fundamental duties of good faith, due care and loyalty.

55. Such breaches of fiduciary duties could not and would not have occurred but for the conduct of Defendants Inspire and Merck, which, therefore, aided and abetted such breaches *via* entering into the Proposed Agreement with Merck.

56. Defendants Inspire and Merck had knowledge that they were aiding and abetting the Individual Defendants' breach of their fiduciary duties to the Inspire shareholders.

57. Defendants Inspire and Merck rendered substantial assistance to the Individual Defendants in their breach of their fiduciary duties to the Inspire shareholders.

58. As a result of Inspire and Merck's conduct of aiding and abetting the Individual Defendants' breaches of fiduciary duties, Plaintiffs and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining a fair price for their shares.

59. As a result of the unlawful actions of Defendants Inspire and Merck, Plaintiffs and the other members of the Class will be irreparably harmed in that they will not receive fair value for Inspire's assets and business, and will be prevented from obtaining the real value of their equity ownership in the Company. Unless the actions of Defendants Inspire and Merck are enjoined by the Court, they will continue to aid and abet the Individual Defendants' breach of their fiduciary duties owed to Plaintiffs and the members of the Class, and will aid and abet a process that inhibits the maximization of shareholder value and the disclosure of material information.

60. Plaintiffs and the other members of the Class have no adequate remedy at law.

61. Plaintiffs seek to obtain a non-pecuniary benefit for the Class in the form of injunctive relief against Defendants Inspire and Merck. Plaintiffs' counsel are entitled to recover

- 14 -

Case 5:11-cv-00180-H   Document 1   Filed 04/14/11   Page 14 of 16

their reasonable attorneys' fees and expenses as a result of the conference of a non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand injunctive relief, in their favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a class action;

B. Declaring and decreeing that the Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

C. Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition and tender offer, unless and until the Company adopts and implements a procedure or process to obtain the highest possible value for shareholders;

D. Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of Inspire's shareholders until the process for the sale or auction of the Company is completed and the highest possible value is obtained;

E. Rescinding, to the extent already implemented, the Agreement or any of the terms thereof;

F. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

The Plaintiffs hereby demand trial by jury on all issues so triable.

DATED:  April 14th, 2011

/s/ Norris A. Adams, II
*Attorney for Plaintiffs*

ESSEX RICHARDS, P.A.
1701 South Blvd.
Charlotte, NC 28203
Telephone: 704-377-4300
Fax: 704-372-1357
nadams@essexrichards.com
N.C. Bar No. 32552
*LR 83.1 Counsel*


ROBBINS GELLER RUDMAN
  & Dowd LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida  33432
561-750-3000
561-750-3364 Facsimile

ROBBINS GELLER RUDMAN
  & Dowd LLP
RANDALL BARRON
A. RICK ATWOOD, JR.
DAVID Wissbroecker
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
The Preston Commons
8117 Preston Rd., Suite 300
Dallas, Texas 75225
214-706-9314 (office)
214-706-9315 (fax)

*Attorneys for Plaintiffs*